JOHANSON v. ALASKA TREADWELL GOLD MINING CO.

(District Court, W. D. Washington, N. D.   April 7, 1915.)

No. 2953.

CORPORATIONS ☞642—FOREIGN CORPORATIONS DOING BUSINESS WITHIN THE STATE.

Rem. & Bal. Code Wash. § 226, subd. 9, provides that summons shall be served by delivering a copy thereof, if the suit be against a foreign corporation doing business within the state, to any agent, cashier, or secretary thereof. The defendant corporation, which was chartered in Minnesota and conducted mining operations in Alaska, maintained a purchasing agent in Seattle, paying his salary, office rent, and expenses. The name of the agent and of the corporation appeared in the directories; but the purchasing agent could make no purchases which were not approved by the corporation. *Held*, that the corporation was not doing business within the state, so that service of summons upon the purchasing agent would give the court jurisdiction over the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. ☞642.]

At Law.   Action by Andrew Johanson against the Alaska Treadwell Gold Mining Company, a corporation, which appeared, specially challenging the jurisdiction of the court.   Service ordered quashed.

John T. Casey, of Seattle, Wash., for plaintiff.
S. H. Piles, James B. Howe, and S. V. Carey, all of Seattle, Wash., for defendant.

NETERER, District Judge.   The plaintiff, a citizen of Washington, brings this action against the defendant, to recover damages for personal injury alleged to have been incurred in Alaska through the negligence of the defendant, and alleges, among other things, that the defendant is a corporation authorized to do business in the state of Washington and in the territory of Alaska, and "operates mining property and quartz mines * * * in Alaska," and "that plaintiff was employed by defendant in the territory of Alaska." The return to the writ shows a service "on the therein named Alaska Treadwell Gold Mining Company by handing to and leaving a true and correct copy thereof with C. W. Russell, as purchasing agent of Alaska Gold Mining Company, personally, at Seattle, in said district, on the 9th day of February, 1915." The defendant appeared specially for the purpose of challenging the jurisdiction of the court.

The jurisdiction must be founded solely upon diversity of citizenship, and in such event suit may be brought in the district of the residence of either plaintiff or defendant, where service may be had. It appears that defendant is a corporation of the state of Minnesota; that it has not complied with the laws of Washington authorizing it to do business in this state; that it has general offices in Alaska, as also in San Francisco, Cal.; that C. W. Russell, upon whom service was made, "is authorized by the Alaska Treadwell Gold Mining Company to act as its purchasing and forwarding agent in Seattle"; that the defendant "pays his salary, office rent, and expenses"; that there is no one employed in connection with the office, except the said Russell; that the said Russell, as such agent, has purchased goods, wares, and merchandise in Seattle, with direction that same be shipped to defendant at Treadwell, Alaska; that all such purchases were subject to the approval of the defendant company on arrival in Alaska; that the duties of such forwarding agent are to see that goods ordered by the defendant itself at Treadwell from Eastern points or cities are transshipped or forwarded, when they arrive in Seattle, to Treadwell, Alaska, via steamship; that said Russell, as agent, does not pay for any goods or disburse any moneys whatsoever, or do any acts other than as stated; that all moneys are disbursed from the general office in San Francisco and in Alaska.

The question to be determined is whether service upon Russell was sufficient, and the element of sufficiency is whether the defendant corporation was doing business within this district. The plaintiff, in support of his contention, calls attention to subdivision 9, § 226, Remington & Ballinger's Code of Washington, which provides that summons shall be served by delivering a copy thereof, "if the suit be against a foreign corporation * * * doing business within this state, to any agent, cashier or secretary thereof," and contends that since the defendant maintains an office in Seattle, pays office rent and office expenses, and employs an agent and pays his salary, it is conclusive that it is doing business within this state, and it is immaterial whether the agent is buying or selling goods, and that a court will assume jurisdiction, unless it clearly appears that the corporation is not doing business in the state or district where it is sued, and cites Barrow v. Kane, 170 U. S. 112, 18 Sup. Ct. 526, 42 L. Ed. 964, Société Fonciere v. Milliken, 135 U. S. 304, 10 Sup. Ct. 823, 34 L. Ed. 208, Conn. Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569, and many others.

In Barrow v. Kane, supra, the action was brought by a citizen of the state of New Jersey in the Circuit Court of the United States, held in the city of New York, against a foreign corporation doing business in the latter state, for a personal tort committed abroad, and an action for which might have been maintained in any Circuit Court of the United States which acquired jurisdiction of the defendant. The summons was duly served upon the regularly appointed agent of the foreign corporation in New York.

In Société Fonciere v. Milliken, supra, the defendant was a foreign corporation organized under the laws of the republic of France, with

special reference to business in the state of Texas, America, and reciting in its charter that the object of the corporation was operations with relation to real estate, agriculture, and commercial operations of every nature whatsoever regarding the acquisition, in the way of grants and otherwise, and the improvement, as owners or otherwise, of lands within the state of Texas, America. The principal place of business was Paris. It had an agent in Texas, who seems to have had and exercised all of the powers of a general agent, and was empowered to borrow money, and the court held that it was doing business within the state.

In Conn. Mutual Life Ins. Co. v. Spratley, supra, the company had been doing an active business within the state for more than 20 years, and had issued many policies of insurance upon the lives of citizens of the state, and continued to collect premiums upon them and pay the losses thereunder, and was doing so at the time of the service of process upon its agent within the state. The other cases cited are all readily distinguishable from the facts in this case.

The Supreme Court of Washington, in Rich v. C., B. & Q. Ry. Co., 34 Wash. 14, at page 16, 74 Pac. at page 1008, says:

"In no event can a foreign corporation * * * be required to answer in an action in personam in this state, unless it be engaged in business herein."

Section 3714, Rem. & Bal. Code of Washington, requires the payment of an annual license fee by domestic corporations and by every foreign corporation having its articles of incorporation on file in the office of the secretary of state; and section 3715 provides that no corporation shall be permitted to commence an action without alleging and proving that it had paid its annual license fee. The Washington court, in Lilly-Brackett v. Sonnemann, 50 Wash. 487, 97 Pac. 505, held that the provision of section 3715 refers only to corporations "doing business in this state."

In Smith & Co. v. Dickinson, 81 Wash. 465, 142 Pac. 1133, the respondent, a foreign corporation, had filed no copy of its articles of incorporation with the secretary of state of Washington, nor had it paid its license fee. The Supreme Court (81 Wash. at page 466, 142 Pac. at page 1134) says:

"The evidence shows that respondent is manufacturing merchandise in the state of Nebraska, and is selling merchandise at wholesale in that state and other states, including the state of Washington; that its representatives take orders for merchandise and forward the same to respondent at Omaha for acceptance or rejection; that, if the order is accepted, the merchandise is shipped from Omaha, Neb., to the purchaser, to whom it is sold upon credit; that the contract of sale is consummated in Omaha; that respondent has salesmen who solicit orders in the state of Washington; that its principal salesman is one Edward J. Bussey, who has offices in the cities of Seattle and Spokane, where he keeps and exhibits samples belonging to respondent; that he solicits orders throughout the state, sometimes taking trips to do so; that sometimes, in the interest of economy, he pays the expenses of proposed customers from their places of residence to Spokane or Seattle, where he exhibits the samples and receives their orders; that all such orders, when taken, are forwarded to respondent at Omaha, for its approval and for shipment of goods; that respondent's agents are not entitled to complete sales, to extend credit, or make collections, but that they represent respondent only in soliciting orders."

It further appeared that "the names of respondent and its agent appeared in the telephone and city directories." The Supreme Court held that respondent was not doing business in the state of Washington. The facts in that case are stronger than in the instant case, except that in the instant case it appears that the defendants paid office rent and salary, and in the case cited it does not appear who paid the rent or whether the compensation was salary. In the instant case the agent's authority and power is circumscribed and limited to specific acts for placing orders for the purchase of goods, wares, and merchandise necessary in the conduct of defendant's business in Alaska, which goods are subject to approval, and to the forwarding of goods ordered by the defendant from Eastern points and shipped to Seattle, all of which acts appear to be entirely incidental to the business of the defendant, which is gold mining in Alaska.

"The phrase 'doing business,' * * * with relation to foreign corporations doing business in the state, does not include a foreign railroad corporation having the road and traffic without the state, but having an office therein which sells tickets over its lines." Doty v. Michigan Central Ry., 8 Abb. Prac. (N. Y.) 427, 428.

The Supreme Court of the United States, in Green v. C., B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, seems to have concluded the issue here presented. That is a case founded upon diversity of citizenship, and service was made upon a reputed agent. The court (205 U. S. at page 532, 27 Sup. Ct. at page 596 [51 L. Ed. 916]) says:

"The Eastern point of the defendant's line of railroad was at Chicago, whence its tracks extended westward. The business for which it was incorporated was the carriage of freight and passengers, and the construction, maintenance, and operation of a railroad for that purpose. As incidental and collateral to that business, it was proper, and, according to the business methods generally pursued probably essential, that freight and passenger traffic should be solicited in other parts of the country than those through which the defendant's tracks ran. For the purpose of conducting this incidental business the defendant employed Mr. Heller, hired an office for him in Philadelphia, designated him as district freight and passenger agent, and in many ways advertised to the public these facts. The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line. For conducting this business several clerks and various traveling passenger and freight agents were employed, who reported to the agent and acted under his direction. He sold no tickets and received no payments for transportation of freight. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the application and applicant's money and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive from the Chicago, Burlington & Quincy Railroad ticket over that road. Occasionally he sold to railroad employés, who already had tickets over intermediate lines, orders for reduced rates over the defendant's lines. In some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over the defendant's lines, he gave in exchange therefor bills of lading over the defendant's line. In these bills of lading it was recited that they should not be in force until the freight had been actually received by the defendant"

—and then stated that the business shown was in substance nothing more than that of solicitation. In the instant case, every established fact is conclusive that the duties performed by C. W. Russell, agent,

were entirely incidental to the business of the defendant in Alaska, and in no sense comprehended "doing business" within contemplation of law.

Reason and precedent, it seems to me, preclude any conclusion other than that challenge to the court's jurisdiction must be sustained. An order may be presented accordingly.