# JOHN NURMI v. J. I. CASE COMPANY.[1]

December 15, 1944.

No. 33,842.

*Fowler, Youngquist, Furber, Taney & Johnson, Field & Field, Clark M. Robertson,* and *Howard R. Johnson,* for appellant.

*Dell & Rosengren,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action to recover damages of defendant, a foreign corporation, for "false and malicious arrest and imprisonment." Plaintiff attempted to obtain service upon defendant by leaving with the secretary of the Minnesota Motor Company, a Minnesota corporation, as alleged agent for defendant, a copy of the summons and complaint. Defendant appeared specially and moved to set aside such service upon the grounds that neither defendant nor its resident agent for service of process was served, and that the Minnesota

[1]Reported in 17 N. W. (2d) 79.

Motor Company was not at any time the agent of defendant. From an order denying its motion, this appeal is taken.

Defendant is a Wisconsin corporation, duly licensed and qualified to do business in the state of Minnesota. At all times involved it maintained a registered office at 233 Seventh avenue south in Minneapolis, with one P. J. Penn as its resident agent and branch manager, duly authorized to accept service on its behalf. No service was made upon him herein.

Minnesota Motor Company is engaged in business at Fergus Falls. M. G. Brimhall is its president and W. J. Larson its secretary. It operated under a dealer's contract with defendant, effective as of November 1, 1943, wherein defendant agreed to sell to it, for resale in certain Minnesota territory assigned to the Minnesota Motor Company, under terms and conditions therein set forth, machinery and equipment manufactured by defendant. The merchandise was sold to the Minnesota corporation under conditional sales contracts wherein title to it remained in defendant until paid for. The portions of the contract material to the issue herein are as follows:

"23. (g) That he [referring to Minnesota Motor Company as dealer] is not an agent of Company and has no right or authority from it to assume or incur any obligation for it, or to make any promise or representation on behalf of Company, and Company shall not be bound by acts or conduct of Dealer."

"STORAGE, TAXES AND INSURANCE.

"10. Dealer agrees to properly shelter and care for all goods purchased and to insure the same at their fair insurable value against loss or damage by fire and wind, with loss payable to Company or Dealer, as their interests may appear. In case of failure on part of Dealer to carry such insurance, Company may at its option, effect the insurance and the premium therefor shall constitute a debt from Dealer to Company payable on demand with interest at legal rate until paid.

"11. Dealer shall pay, or shall reimburse Company if it has paid or has reimbursed others therefor, all license fees, property, sales, use and excise taxes, and other charges which may at any time be levied or assessed by Federal, State or local law upon any goods purchased hereunder or imposed by similar authority by reason of the manufacture, purchase, or sale thereof, or assessed from time to time upon or on account of any note or other document arising out of this contract or the indebtedness evidenced thereby. The amount of any such charge when paid by Company or reimbursed by it to others may be billed separately to Dealer, payable by him on demand, or may be added to or included in the invoice price of the goods at Company's option. The amount actually paid by Company shall be deemed conclusive as to the amount legally due and shall bear interest at legal rate until paid.

"12. Dealer agrees that all goods purchased under this contract shall be usually kept at . . . , in Fergus Falls, county of Otter-tail, state of Minnesota until resold by Dealer in the manner authorized herein.

"RESALE BY DEALER.

\* \* \* \* \*

"14. On the resale of all goods having a retail price of $50.00 or more, for which Company has not received payment, Dealer agrees to obtain signed order from purchaser upon form furnished by Company; to deliver copies of all resale orders to Company; to obtain from the purchaser at the time of sale or delivery of all goods resold, payment therefor in cash or a cash installment on purchase price and purchaser's note or notes for the balance in accordance with Company's Resale Terms; and to use Company's resale settlement forms. Purchaser's note shall be secured by chattel mortgage or conditional sales agreement on the goods resold and by such additional security as will adequately secure the purchase price. On resale of tractors, machines and implements on a time basis, either wholly or in part, Dealer shall submit purchaser's order to Company for approval and no delivery of goods shall be made until such approval has been obtained.

"In the event Dealer fails to furnish complete and accurate information as to his customer's credit where Company's approval of order is required hereunder, he agrees to pay on demand any expense incurred by Company in obtaining such information."

"DEALER AGREES:

"23. (a) To diligently canvass for purchasers of Case machinery and implements for agricultural purposes and in all reasonable and proper ways to promote the trade and interests of the Company; to receive, pay transportation charges upon, care for and thoroughly distribute such advertising matter as the Company may furnish; to thoroughly advertise in local newspapers; and to render all necessary service on Case goods.

"(b) To pay necessary postage and to provide a proper rubber stamp for affixing his name and address for direct mail advertising campaigns to prospects furnished by him in consideration of the Company furnishing the literature, making the enclosures, addressing and doing the mailing; and to promptly follow up each mailing with a personal canvass of every prospect.

\* \* \* \* \*

"(e) Not to interfere with or attempt to control the trade of persons seeking to purchase through any other Dealer authorized by Company.

\* \* \* \* \*

"(h) To insure the proper operation at all times of Case machinery and implements, by carrying in stock a sufficient quantity of parts for all lines of goods handled to take care of the trade in his territory during the term of this contract, and to sell for use in connection with Case machines and implements only such parts and extras as are manufactured and sold by Company or authorized by it.

"WARRANTY.

"24. Purchaser's order forms furnished by Company for use by Dealer contain the standard Case warranty to the purchaser. This is the *only* warranty Dealer is authorized to give and the order form containing such warranty must be used on *all* resales for

Dealer's protection. Dealer agrees to use his best efforts in the field to correct any defect in Case goods within two (2) days after receiving notice from purchaser of the alleged defect and, in event Company elects to have returned to purchaser the money or notes or proportionate part thereof representing any defective machine or part and such money or notes are in Dealer's possession, he agrees to make return thereof, in which case Company agrees to credit Dealer with the invoice price, (less all discounts taken) of the machine or part returned and the same shall be the property of the Company. Where the goods are found by the Company not to be defective in material or workmanship, Dealer agrees to pay Company for its time and expense in the event purchaser fails promptly so to do."

This court has previously had occasion to construe a similar contract. In State v. J. I. Case Co. 189 Minn. 180, 181, 248 N. W. 726, which involved a like agreement with a different dealer, we stated:

"The contract is within the class commonly designated conditional sale contracts. It may be in some respects peculiar. It contemplated that the vendee would resell and that the defendant would have the security which might come on resale."

In effect this court further stated that said J. I. Case Company was not by virtue of such contract doing business at the location of the dealer thereunder, recognizing and upholding the distinct and separate entities of the dealer and defendant corporation. In this connection it was further stated (189 Minn. 182, 248 N. W. 726):

"The defendant was not doing an implement or machinery business in Raymond [the location of its dealer under said contract]. It did not have property there for sale. Its arrangement with the Tolen company did not make a bailment. The defendant did not consign the property to the Tolen company. * * * The defendant did not store its property in Raymond. * * * The Tolen company, not the Case company, was the merchant at Raymond."

Here, the trial court, by its order and memorandum, in effect held that the relationship existing between defendant and the Minnesota Motor Company at the time of service of the summons in this action was that of principal and agent as evidenced by the aforesaid contract, and hence that the service of summons upon the Minnesota Motor Company was proper and gave the Minnesota court jurisdiction.

Minn. St. 1941, § 303.13, subd. 1(1), (Mason St. 1940 Supp. § 7495-13[a][1]), provides:

"Subd. 1. A foreign corporation shall be subject to service of process, as follows:

"(1) By service thereof on its registered agent;"

An additional method for such service is provided by § 543.08 (Mason St. 1927, § 9231[3]), as follows:

"If the defendant be a foreign corporation the summons may be served by delivering a copy to any of its officers or agents within the state, * * *."

Plaintiff contends that service here was proper under the latter provision. We have held that, to constitute a person an agent of a foreign corporation for service, he must be actually appointed by the corporation; that such agency cannot be established by construction or implication contrary to the intention of the parties. Mikolas v. Hiram Walker & Sons, 73 Minn. 305, 76 N. W. 36; North Wisconsin Cattle Co. v. Oregon Short Line R. Co. 105 Minn. 198, 117 N. W. 391. To obtain jurisdiction over a foreign corporation by service upon its agent within this state, the latter's authority and business operations must be such that in him the corporation is present within the state. Mikolas v. Hiram Walker & Sons, *supra;* Paterson v. Shattuck Ariz. Copper Co. 169 Minn. 49, 210 N. W. 620.

Service on defendant's resident agent, P. J. Penn, would unquestionably have given the Minnesota courts jurisdiction in this case. The Minnesota Motor Company, however, although it dealt exclusively in defendant's merchandise, was never at any time

authorized to represent defendant in Minnesota for the service of process, or otherwise, nor was it ever appointed to a position of representative capacity and authority for defendant.

Under the foregoing decisions, it is clear that the Minnesota Motor Company, a separate, independent, local corporation, in which defendant owned no stock, over which it had no authority or control, and which had never been designated, either expressly or by implication, as its agent for any purpose, did not represent defendant in Minnesota for the service of process, and hence the attempted service here was null and void.

Plaintiff relies upon Carroll Elec. Co. v. Freed-Eisemann Radio Corp. 60 App. D. C. 228, 50 F. (2d) 993, which likewise involved a dealer's contract. The statutory provision there involved (Code of District of Columbia, 1929, T. 24, § 373), provides as follows:

"In actions against foreign corporations * * * process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a copy at the principal place of business in the District, * * *.

"When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual * * *."

Defendant there, the Freed-Eisemann Radio Corporation, employed one McCarthy as a salesman within the District of Columbia. Plaintiff caused service of process to be made upon defendant by leaving a copy of the summons with McCarthy. It was undisputed that McCarthy was actively engaged within the District of Columbia as a salesman on behalf of the defendant corporation, and hence that the case fell within the provisions of the second paragraph of § 373, T. 24, of the Code of the District of Columbia, 1929, *supra,* and that the service and summons on McCarthy, who was an employe of defendant, was valid thereunder. Clearly, both the law and the facts distinguish that case from the one at hand.

In State ex rel. Columbia Broadcasting Co. v. Superior Court, 1 Wash. (2d) 379, 96 P. (2d) 248, likewise relied upon by plaintiff, the courts of Washington construed an agreement between the Columbia company, the defendant therein, and a local radio station, as evidence of the former's business activity within the state of Washington, and ratified service of process upon the agent of the local corporation. The opinion cited seems somewhat at variance with the majority rule, particularly with this court's construction of the contract involved in State v. J. I. Case Co. 189 Minn. 180, 248 N. W. 726, *supra.* It is interesting to note that subsequently the supreme court of Washington vacated its judgment therein. 5 Wash. (2d) 711, 105 P. (2d) 70.

We hold that the attempted service of process upon defendant did not constitute compliance with the statutory provisions above quoted, and hence that the service was null and void.

Reversed.