Pearl A. WANAMAKER and Lemuel Wanamaker,

v.

Fulton LEWIS, Jr., Mutual Broadcasting System, Inc., a body corporate, Baltimore Broadcasting Corp., a body corporate, The Peninsula Broadcasting Co., a body corporate, Hagerstown Broadcasting Company, a body corporate.

Civ. No. 9346.

United States District Court
D. Maryland.

July 5, 1957.

**196**

Max R. Israelson, of Baltimore, Md., and Tonkoff, Holst & Hopp, of Yakima, Wash., for plaintiffs.

Semmes, Bowen & Semmes, William D. Macmillan and Richard F. Cleveland, and J. Purdon Wright, of Baltimore, Md., for defendants.

R. DORSEY WATKINS, District Judge.

■ On January 6, 1956, defendant Fulton Lewis, Jr. made a broadcast over the facilities of the defendant, Mutual Broadcasting System, Inc., (Mutual) which was relayed to and rebroadcast from the facilities of the defendants, Baltimore Broadcasting Corporation (WCBM), the Peninsula Broadcasting Company (WBOC), and Hagerstown Broadcasting Company (WJEJ). Pearl A. Wanamaker, with her husband being joined as a plaintiff,[1] sued the above named defendants, claiming that the broadcast defamed her.

Service was purported to be effected upon Mutual, which has no resident agent in, and has not qualified to do an intrastate, nor registered to do an interstate business in, Maryland, by service on and through the State Tax Commission of Maryland under the provisions of Maryland Code of Public General Laws 1951 Edition, Art. 23, Secs. 85, 88 and 92. Mutual moved to dismiss the action or in the alternative, to quash the summons for want of jurisdiction over its person, on the ground that it is an Illinois corporation and was not doing at any relevant time, and never had done, business in the State of Maryland.

At the hearing on the motion counsel for Mutual conceded that if Mutual were found to be "doing business" in Maryland at the time of the alleged defamatory broadcast, the service would be effective. The sole question is therefore whether Mutual is doing business[2] within the meaning of Title 28 U.S.C.

1. The complaint states: "Upon the Plaintiff's wife being so embarrassed, humiliated, and deprived of public confidence, her husband, the Plaintiff, Lemuel Wanamaker, has suffered great loss and damage and lost and will lose the services of his wife."

2. There has been no change in the nature of operations between January 6, 1956 and the institution of suit on December 31, 1956.

§ 1391 [3] and Maryland Code, Art. 23, Sec. 88.[4]

The motion was heard on affidavit of the vice president of Mutual in charge of Station Relations; his oral testimony; and a single exhibit consisting of a typical "Affiliation Contract".[5]

From this testimony, I find the following facts:

Mutual is an Illinios corporation, with its principal office in New York City. It is engaged in the operation of a national radio network, with some 500 affiliated stations (Stations) throughout the country. Most of its nationally broadcast programs originate in New York, as did the one in question, and are sent through lines leased to it by the Telephone Company directly to the individual Stations. Mutual maintains no office in Maryland; its name is not listed in the Baltimore City or any Maryland telephone directory; it has no employees regularly stationed in Maryland, and since January 1, 1955, has originated only three broadcasts (football games) from within the State of Maryland, and for this purpose sent its own broadcasting personnel into the State. Officers or representatives of Mutual come into the State only to adjust complaints; or to make courtesy calls; or to endeavor to obtain a new affiliated Station. The witness visits the State an average of only once a year.

At the time in question Mutual had three affiliated Stations in Maryland; WCBM in Baltimore; WJEJ in Hagerstown; and WBOC in Salisbury. Each of these Stations was and is independently owned and operated, and Mutual has and has had no proprietary interest in any Maryland broadcasting Station.

Under the Affiliation Contract, Mutual causes its program transmission lines to be extended to the control room of the main studio of a Station. Mutual offers sustaining programs to the Station and the Station undertakes to make available to Mutual programs produced or developed by the Station. The Station agrees to "sell broadcasting time" to Mutual for producing commercial programs at stated "mutual option times." In the exhibit contract these times were:

"Monday through Saturday*

10:00 am to 12:30 pm
1:00 pm to 3:00 pm**
2:00 pm to 4:00 pm***
5:00 pm to 6:00 pm LOCAL TIME
7:30 pm to 10:30 pm

Sunday*

11:00 am to 2:00 pm
4:00 pm to 7:00 pm
8:30 pm to 10:30 pm

*Except as otherwise indicated time is New York City Time.

** Saturday only
*** Except Saturday"

3. Title 28 U.S.C. § 1391(c) : A corporation may be sued in any judicial district in which "it * * * is doing business * * *."

4. Maryland Code of Public General Laws, 1951 Edition, Art. 23, Sec. 88(b): "Every foreign corporation doing intrastate or interstate or foreign business in this State shall be subject to suit in this State by a non-resident of this State, (1) on any cause of action arising out of such business, and (2) provided that the bringing of such suit in this State is not an undue burden upon the defendant or upon interstate or foreign commerce, on any cause of action arising outside of this State."

5. The exhibit is a conformed copy of agreement dated May 28, 1952 between Mutual and Baltimore Broadcasting Corporation, the owner and operator of broadcast Station WCBM.

The actual broadcast from a Station is effected merely by "flipping a switch on a control panel." A Station is obligated to continue the broadcast of commercial programs within the hours above stated, the only right of rejection being on grounds that any particular program is believed "to be unsatisfactory or unsuitable" or that it "is contrary to the public interest." In practice, where there may be a conflict with matters of local interest, the scheduled commercial broadcast may be postponed and rebroadcast from tape recording. A station-break is taken every half hour, at which time it is not compulsory that Mutual be identified, but at the end of each program an announcement is made that: "This is the Mutual Broadcasting System" or there is an announcement of a similar purport.

The contract is initially for a two year period, with automatic renewal; and with provisions for termination on specified notice or for cause.

The advertising contained in Mutual commercial programs is ordinarily that of products with a nationwide appeal. Such advertising is placed with Mutual through advertising agencies. The rates paid by sponsors of such advertising are more than fifty times the rate charged by a local Station for local advertising. A complicated schedule of compensation to be paid the Station by Mutual is set forth in the contract.

Mutual buys the right to use the Station facilities for the transmission of sound; and more specifically, the transmission of sounds heard as commercial advertising. Each Station is a source of output, or distribution of Mutual's product, as much as a gasoline service station, or a soft drink dispensary. The question accordingly is, whether the purchase of the right to use, and the use of, locally-owned facilities for the local dissemination of advertising is "doing business" in Maryland.

The starting point of any such consideration is of course the decision of the Supreme Court in International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. In holding that the operations of the defendant corporation therein described "establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice," (326 U.S. at page 320, 66 S.Ct. at page 160) that it stand suit therein, the court said (326 U.S. at pages 316–317, 66 S.Ct. at page 158):

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278. See Holmes, J., in McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608. Compare Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 606, 87 L.Ed. 777. See Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158.

"Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S. Ct. 15, 16, 75 L.Ed. 140, it is clear that unlike an individual its 'presence' without, as well as within, the

state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, J., in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra, 45 F.2d 141."

The question of whether a broadcast originator, such as Mutual, is subject to suit in a state in which an affiliated Station is located, has been dealt with specifically in only two reported cases. In Hoffman v. Carter, 1936, 117 N.J.L. 205, 187 A. 576, the New Jersey Supreme Court held that Columbia Broadcasting System, Incorporated, the originator, was not doing business in New Jersey by furnishing programs to New Jersey stations. On appeal, the Court of Errors and Appeals, in Hoffman v. Carter, 1937, 118 N.J.L. 379, 192 A. 825, 826, affirmed the setting aside of the service of summons on Columbia, but upon the sole "ground that it was not served with process." It reserved decision on the question of whether or not Columbia was doing business in New Jersey, saying (118 N.J.L. 379, 192 A. 826):

"We reserve decision as to whether the delivery at radio receivers in this state of programs transmitted by the Columbia Company from its New York studio in any sense or to any degree constituted the doing of business by it in this state."

In State ex rel. Columbia Broadcasting Co. v. Superior Court for King County, 1939, 1 Wash.2d 379, 96 P.2d 248; case moot, judgment vacated and case remanded, 1940, 310 U.S. 613, 60 S.Ct. 1085, 84 L.Ed. 1389; judgment vacated, 1940, 5 Wash.2d 711, 105 P.2d 70, a hospital association brought suit for damages from an alleged defamatory broadcast, originated by Columbia in St. Louis, Missouri, and transmitted to Seattle, Washington, where it was broadcast by a local station. Columbia claimed it was not amenable to suit in Washington, as it was a foreign corporation not doing business within the state. The contract between Columbia and the local station contained provisions with respect to use of facilities substantially similar to the "Affiliation Contract" in this case. The Washington Supreme Court held that Columbia was doing business within the state, and was subject to suit therein. The court said (1 Wash.2d at pages 384–385, 96 P.2d at page 250, quoting with approval from Fisher's Blend Station, Inc., v. State Tax Commission, 1936, 297 U.S. 650, 654–655, 56 S.Ct. 608, 80 L. Ed. 956):

"Appellant is thus engaged in the business of transmitting advertising programs from its stations in Washington to those persons in other states who 'listen in' through the use of receiving sets. In all essentials its procedure does not differ from that employed in sending telegraph or telephone messages across state lines, which is interstate commerce. * * * In each, transmission is effected by means of energy manifestations produced at the point of reception in one state which are generated and controlled at the sending point in another. Whether the transmission is effected by the

aid of wires, or through a perhaps less well understood medium, 'the ether,' is immaterial \* \* \* the transmission of information interstate is a form of 'intercourse,' which is commerce. \* \* \*

"Similarly, we perceive no basis for the distinction urged by appellee, that appellant does not own or control the receiving mechanisms. The communications broadcasted are no less complete and effective, nor any the less effected by appellant, because it does not own or command the apparatus by which they are received. The essential purpose and indispensable effect of all broadcasting is the transmission of intelligence from the broadcasting station to distant listeners. It is that for which the customer pays."

Mutual seeks to impair the effect of this decision by reliance upon the claimed merits of Judge Robinson's dissent, which attacked the majority on two main grounds: (a) That Columbia could not have been doing business through the local station, since that station was not an agent, but an independent contractor. However, the Maryland Court of Appeals in Topps Garment Mfg. Corp. v. State, 1957, 212 Md. 23, 128 A.2d 595, has held that the activities of independent contractors made a foreign corporation liable for the Maryland Use Tax on goods shipped into the state on orders solicited within, but accepted without, the State.[6] (b) That Columbia's position was like that of a publishing company; and that a publishing company has never been held to be doing business in a state by shipping its product to an independent contractor who then makes sales to the public. But in Kahn v. Maico Co., 4 Cir., 1945, 216 F.2d 233, Chief Judge

Parker quoted with approval from Mr. Justice Black's dissent in Polizzi v. Cowles Magazines, Inc., 1953, 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331, in which Mr. Justice Black reached the conclusion that the very activity referred to by Judge Robinson *would* constitute doing business by the publisher, and make it amenable to suit in the State in which distribution occurred.

The factual situations in the cases dealing with the meaning of "doing business" within the Maryland statutes are so divergent from those in the instant case that no useful purpose would be served by any detailed discussion. However, the very definite trend, particularly of the very recent cases, has been one of exceeding liberality in the interpretation and application of that phrase. See Thomas v. Hudson Sales Corp., 1954, 204 Md. 450, 105 A.2d 225; Compania De Astral, S. A. v. Boston Metals Co., 1954, 205 Md. 237, 107 A.2d 357, 108 A.2d 372, certiorari denied 1955, 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738; and Topps Garment Mfg. Corp. v. State, 1957, 212 Md. 23, 128 A.2d 595. In accord are Kahn v. Maico Co., 4 Cir., 1954, 216 F.2d 233[7]; La Porte Heinekamp Motor Co. v. Ford Motor Co., D.C.D.Md., 1928, 24 F.2d 861; Ericksson v. Cartan Travel Bureau, D.C. D.Md., 1953, 109 F.Supp. 315; and Hall, Inc., v. Flintkote Co., D.C.D.Md., 1956, 139 F.Supp. 32. Cf. Erlanger Mills, Inc., v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F.2d 502.

█ The court therefore finds as a fact, and concludes as a matter of law, that Mutual is doing business in Maryland within the provisions of Article 23, Section 88 of the Maryland Code, and Title 28 U.S.C. § 1391. Defendant Mutual urges, however, that even if this be the case, concepts of "fair play and sub-

---

6. The implications of this holding are quite significant in their bearing upon the whole question of "doing business", since probably less activity within the state is necessary to support service of process than to render a foreign corporation amenable to taxation. See Reiblich, Jurisdiction of Maryland Courts over Foreign Corporations under the Act of 1937, 3 Md.L.Rev. 35, 43.

7. At page 237, Chief Judge Parker said that "the spirit of the statute \* \* \* is to extend the jurisdiction of the Maryland courts over suits by citizens of the state or contracts made within the state as far as constitutionally possible."

stantial justice" (International Shoe Co. case, supra) require that the suit be brought in Illinois, the State of its incorporation, or in New York, where it has its principal office. In this connection, Mutual points out that it was sued in New York by the Wanamakers at or about the same time this suit was instituted, and that the causes of action are the same.

After the hearing on the motion had been completed, and briefs had been filed, Mutual asked leave to offer additional testimony. Subsequently a stipulation was filed that the following facts were true, the plaintiffs objecting to the admissibility of said facts on the ground of relevancy:

"That Mutual Broadcasting System, Inc., one of the Defendants herein, maintains in its name an office for the conduct of business in the District of Columbia; that it is a Defendant in the case of Pearl A. Wanamaker v. Fulton Lewis, Jr., et al., in the U. S. District Court for the District of Columbia, Case No. 1–57, and has been duly served and has filed its answer therein, admitting the allegation of the complaint therein that it is doing business in the District of Columbia; and that said complaint is based upon the same broadcast as is complained of in the instant case."

However, the defendants WCBM, WBOC and WJEJ are Maryland corporations, and the remaining defendant, Fulton Lewis, Jr. is a citizen of the District of Columbia. Maryland is therefore the only forum in which, over objection, more than two defendants are subject to suit. Moreover, the court takes judicial notice of the fact that cases can be reached for trial more expeditiously in the District of Maryland than in the Southern District of New York, and at least as promptly as in the District of Columbia. The court therefore concludes that fairness, convenience and expedition would be served by trial in Maryland.

Mutual's motion to dismiss the action or in the alternative to quash the summons is denied. An appropriate order will be entered on presentation.