[No. 13886. Department Two. May 19, 1917.]

JAMES MACARIO, *Appellant*, v. ALASKA GASTINEAU MINING COMPANY *et al., Respondents.*[1]

CORPORATIONS—FOREIGN CORPORATIONS—ACTIONS — JURISDICTION— DOING BUSINESS IN STATE—SUPPLY AGENT. A foreign corporation, mining in Alaska, is not doing business in this state to an extent to give our courts jurisdiction of an action for personal injuries arising in Alaska, where its only business in this state was to maintain a "Forwarding" agent to purchase and forward supplies to Alaska, ·and who occasionally performed such other duties as procuring hotel and railroad transportation reservations for officers and employees of the company and by special direction had twice represented the company in dealings with injured workmen (HOLCOMB, J., dissents).

SAME. The fact that a foreign corporation has personal property in this state cannot be considered in aid of jurisdiction by service of summons in an action to recover a judgment *in personam*.

APPEARANCE — GENERAL OR SPECIAL — PETITION FOR REMOVAL OF CAUSE—AMENDMENT. A petition in general terms for the removal of a cause to the Federal court, without restricting a special appearance in the state court, is not a general appearance waiving the objection to the jurisdiction; hence an amendment of such petition would not be a general appearance.

JUDGMENT — DEFAULT — SETTING ASIDE — POWER OF COURT. A default judgment, entered upon an illegal service of summons which was insufficient to give the court jurisdiction, is void and should be set aside on the court's own motion as a matter of course.

MASTER AND SERVANT—INJURY TO SERVANT—VICE PRINCIPAL—LIABILITY OF SUPERINTENDENT. The master's superintendent is not liable for personal injuries sustained through an explosion of dynamite, occurring during his absence, where no act of his was the proximate cause of the injury, and the accident would not have happened had his directions been followed.

Appeal from an order and judgment of the superior court for King county, Gilliam and Mackintosh, JJ., entered March 24, and April 7, 1916, quashing service of summons, and granting a nonsuit, in an action for personal injuries sus-

[1]Reported in 165 Pac. 73.

tained by an employee through an explosion of dynamite. Affirmed.

*John F. Miller, John T. Casey,* and *R. J. Boryer,* for appellant.

*Ralph S. Pierce,* for respondent.

*Lyons & Orton,* for respondent O'Neill.

PARKER, J.—The plaintiff, Macario, commenced this action in the superior court for King county, seeking recovery of damages for personal injuries against the defendants mining company and O'Neill, which personal injuries he claims to have suffered as the result of the negligence of the defendants while he was employed by the mining company under the direction of O'Neill, its foreman, in its mining operations in Alaska.

The mining company is a corporation organized and existing under the laws of the state of New York, and is engaged in mining operations in Alaska, being duly authorized to do business therein under the laws of that territory. It has never complied with our statute relating to the doing of business in this state by foreign corporations. It claims that it never did business in this state of the nature that called for any such compliance on its part, and also that it never did business in this state of such nature that it can lawfully be subjected to the process of our courts. The plaintiff sought to have the superior court for King county acquire jurisdiction over the mining company in this action by service of summons upon Robert Munro as its agent in Seattle. The mining company appeared specially and moved to quash the service of the summons upon the ground that it was not doing business in this state of such nature as to enable our courts to acquire jurisdiction over it in this case. Trial before the court upon the issue of whether it was so doing business in this state resulted in findings and an order quashing the service of summons upon Munro as the company's

agent and holding the service for naught.   Defendant O'Neill was personally served with summons in Seattle, and the case proceeded to trial upon the merits as against him before the court sitting with a jury, when, at the close of the evidence introduced in the plaintiff's behalf, counsel for defendant O'Neill moved for a dismissal of the action upon the ground that the evidence introduced was insufficient to support any recovery as against him.   This motion was, by the court, granted and the jury discharged.   The plaintiff has appealed from the order of the court quashing the service of summons upon Munro as agent of the mining company, and also from the judgment of dismissal in favor of defendant O'Neill.

Respondent mining company, while organized under the laws of the state of New York and having its head office in that state, is principally engaged in somewhat extensive mining operations in Alaska.   Since the year 1912, Robert Munro, a resident of Seattle, has been its employee upon a regular salary.   His title as such employee is "Supply and Forwarding Agent."   The mining company maintains an office in Seattle, which has been, at all times since 1912, under Munro's charge with two other salaried employees under him.   The duty of Munro has been to forward from Seattle supplies to the mining company at its place of operation in Alaska.   These supplies would be purchased at different points in the states, shipped by rail to Seattle, some of them also being purchased in Seattle, when Munro, as representative of the mining company there, would attend to their transfer and shipment by boat to the mining company in Alaska.   Munro apparently had considerable to do with the purchase of these supplies, especially the portion thereof purchased in Seattle.   He had authority to make contracts of purchase, at least to some extent, though apparently, when purchases in any considerable sum were made he was required to submit the same to officers of the company, either in New York or Alaska, for approval before the final consummation of such purchases.   There were large quantities

of supplies thus forwarded from Seattle by Munro to the mining company in Alaska. This constituted the principal work of Munro for the mining company in this state. There were, however, other duties occasionally performed by him for the mining company, such as making hotel and transportation reservations for officers and employees of the company passing through Seattle on their way to and from Alaska. He also, on two or three occasions, by special direction from the Alaska office, made arrangements for the care of injured workmen sent by the company to Seattle from Alaska for treatment, and on one occasion signed and verified an answer for the company in an action pending against it in the United States district court sitting at Seattle, and on another occasion, by special direction from the Alaska office, made arrangement with one of its injured workmen, who was then in Seattle, for a compromise of the workman's claim against the mining company. The foregoing summary, we think, constitutes a fair statement of all the business the mining company ever did in this state, and is as favorable to appellant's contentions as the record will admit of.

It was conceded that Munro was the agent of the mining company for the purpose of doing all of the things above noticed, and that if the doing of these things at Seattle constituted the doing of business in this state by the mining company to the extent that it thereby became subject to the process of the superior court for King county in this action, then the service of the summons upon Munro was an effective service upon the mining company, in so far as the question of his agency alone is concerned. So the question here is, Was the mining company doing business in this state to the extent that it became subject to the process of our courts in this action?

Conceding, for argument's sake, speaking generally, that this cause of action is transitory, being one which appellant may sue the mining company to recover upon in any court

within whose jurisdiction he can find the mining company and procure lawful service of process upon it, let us have in mind that this cause of action arose, if at all, in Alaska, where the mining company is doing its principal business. It may be that, if a cause of action should arise in this state against the mining company growing directly out of an authorized agency act of Munro, the mining company could be sued thereon in the courts of this state, though its doing business in this state be limited to the particular act creating such cause of action and though it should be held not to be engaged in business generally in this state. We think an examination of the authorities will show that the place of the arising of the cause of action has been generally regarded as of controlling force by the courts in determining the question of a defendant foreign corporation being subject to the process of the court wherein recovery is sought, whenever the question of such foreign corporation doing business generally in the state in which it is sought to be sued is one of doubt. 19 Cyc. 1338, 1339. Our problem then is, as we view it, was the mining company doing business in this state to that extent which subjected it to the process of our courts as to any and all transitory causes of action maintainable against it. Our inquiry must necessarily take this broad scope, since every possible element of the cause of action here involved arose in Alaska and was wholly unconnected with any act or business transaction of the mining company in this state. So the jurisdiction of the superior court for King county is not aided in the least by the place of the arising of the cause of action, as such jurisdiction would be aided had the cause of action arisen in this state.

The opinion of the supreme court of the United States in *Green v. Chicago, B. & Q. R. Co.*, 205 U. S. 530, we think, is decisive of this question. That was an action in the circuit court of the United States for the eastern district of Pennsylvania, to recover damages for personal injuries occurring in Colorado, which were claimed to have resulted from the

negligence of the railway company, an Iowa corporation. The railway company did not operate any railway lines in Pennsylvania, though it did some business there in the way of entering into contracts for transportation of persons and property over its lines west of Chicago, which business, as we view it, bore at least as intimate relation to the general business of the railway company as the business done by Munro in Seattle bore to the general business of respondent mining company. In holding that such business transacted in Pennsylvania by the railway company's agent did not constitute the doing of business by that company in Pennsylvania to the extent of subjecting it to be sued in Pennsylvania upon a cause of action for personal injury occurring in Colorado, Justice Moody, speaking for the court, said:

"The eastern point of the defendant's line of railroad was at Chicago, whence its tracks extended westward. The business for which it was incorporated was the carriage of freight and passengers, and the construction, maintenance, and operation of a railroad for that purpose. As incidental and collateral to that business it was proper, and, according to the business methods generally pursued, probably essential, that freight and passenger traffic should be solicited in other parts of the country than those through which the defendant's tracks ran. For the purpose of conducting this incidental business the defendant employed Mr. Heller, hired an office for him in Philadelphia, designated him as district freight and passenger agent, and in many ways advertised to the public these facts. The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line. For conducting this business several clerks and various travelling passenger and freight agents were employed, who reported to the agent and acted under his direction. He sold no tickets and received no payments for transportation of freight. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive from the

Chicago, Burlington & Quincy Railroad a ticket over that road. . . .

"The question here is whether service upon the agent was sufficient; and one element of its sufficiency is whether the facts show that the defendant corporation was doing business within the district. It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carriage of freight or passengers. . . .

"The business shown in this case was in substance nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it. This view accords with several decisions in the lower Federal courts. *Maxwell v. Atchison &c. Railroad*, 34 Fed. Rep. 286; *Fairbanks & Co. v. Cincinnati &c. Railroad*, 54 Fed. Rep. 420; *Union Associated Press v. Times Star Co.*, 84 Fed. Rep. 419; *Earle v. Chesapeake &c. Railroad*, 127 Fed. Rep. 235."

We think no decision rendered by this court is so directly in point here as to be of controlling force, though our decision in the following cases are in harmony with, and may be said to lend some support to, the view that the mining company did not do business in this state to the extent that it became subject to being sued in our courts upon this alleged personal injury cause of action arising in Alaska: *Rich v. Chicago, B. & Q. R. Co.*, 34 Wash. 14, 74 Pac. 1008; *Arrow Lumber & Shingle Co. v. Union Pac. R. Co.*, 53 Wash. 629, 102 Pac. 650; *Smith & Co. v. Dickinson*, 81 Wash. 465, 142 Pac. 1133. The decision of our Federal district court in *Johanson v. Alaska Treadwell Gold Mining Co.*, 225 Fed. 270, also lends support to this conclusion.

Our decision in *Lee v. Fidelity Storage & Transfer Co.*, 51 Wash. 208, 98 Pac. 658, and *Spokane Merchants Ass'n v. Clere Clothing Co.*, 84 Wash. 616, 147 Pac. 414, upon a casual reading may seem to lend some support to appellant's contention; but a critical examination of those cases will show

that they both involved causes of action clearly arising in this state, and such as the defendant corporations would be liable to be sued upon in this state regardless of whether they were doing business generally therein or not.   Our decision in *Sievers v. Dalles, Portland & A. Nav. Co.*, 24 Wash. 302, 64 Pac. 539, may also seem to lend some support to appellant's contention.   In that case, however, the defendant foreign corporation was held suable in this state by service upon its purser at Vancouver, in this state, upon the ground that its regularly receiving and discharge of freight and collecting charges therefor at Vancouver constituted the doing of business generally in this state.   This, it seems to us, may be likened to a railway company maintaining its lines and a transportation business over them in a state other than the one of its creation.   We note that the question apparently most seriously considered by the court in that case was as to the agency of the purser, and as to his being such agent of the foreign corporation as could be served with process against it.   The question of its doing business in the state such as to render it subject to the process of our courts apparently received but little consideration.

The authorities principally relied upon by counsel for appellant are the decisions of the court of appeals of Kentucky in *International Harvester Co. of America v. Commonwealth*, 147 Ky. 655, 145 S. W. 393, and the supreme court of the United States in the same case upon writ of error, *International Harvester Co. of America v. Commonwealth of Kentucky*, 234 U. S. 579, where the decision of the Kentucky court of appeals was affirmed, holding that the International Harvester Company was doing business in the state of Kentucky to the extent that it was subject to the process of the courts of Kentucky and suable therein upon the cause of action involved.   That was a prosecution upon an indictment against the harvester company charging it with being a member of a pool or combination with other companies for the purpose of regulating and controlling the price of ma-

chinery and to enhance the cost thereof above its reasonable value, in violation of the statutes of Kentucky. The process issued was, in substance, the same as a summons in a civil action requiring the harvester company to appear and defend. It was served upon one Pace, as the agent of the company, within the jurisdiction of the Kentucky court in which the indictment had been returned. Some of the particular acts complained of in the indictment were charged to have been done by and through Pace as agent of the company, and it is plain that the offense was committed, or the cause of action, if we may call it such, arose in Kentucky. The business of the harvester company in Kentucky was that of selling harvester machinery, and was quite extensive and spread generally throughout the state. In deciding that case, Justice Day, speaking for the court, at page 586, said:

"It is argued that this conclusion is in direct conflict with the case of *Green v. Chicago, Burlington & Quincy Ry.*, 205 U. S. 530. We have no desire to depart from that decision, which, however, was an extreme case."

It seems to us that, as the railway company's business in the *Green* case was, by the court, differentiated from the harvester company's business in Kentucky, so may the business of respondent mining company in Seattle be differentiated from the harvester company's business in Kentucky. In other words, as the railroad company's business in Pennsylvania was regarded merely as incidental to its business in Colorado, so may the mining company's business in Seattle be regarded as merely incidental to its principal business, which is in Alaska. The *Harvester Company* case can also be differentiated from the *Green* and this case in that it was an action seeking to recover a penalty upon a cause of action arising in Kentucky.

The following decisions of the courts, we think, show that the liability of a foreign corporation to be sued in a state other than that of its creation because of its doing business therein, upon any and all transitory causes of action arising

against it, and the liability of a foreign corporation to be
sued in a state other than that of its creation because of its
doing business therein, upon a particular cause of action
arising in the state wherein it is sought to be sued, are two
different questions; and the decision of the latter question is
not necessarily determinative of the former. *National Con-
densed Milk Co. v. Brandenburgh*, 40 N. J. L. 111; *Colorado
Iron-Works v. Sierra Grande Min. Co.*, 15 Colo. 499, 25 Pac.
325, 22 Am. St. 433; *Council Bluffs Canning Co. v. Omaha
Tinware Mfg. Co.*, 49 Neb. 537, 68 N. W. 929; *Hiller v. Bur-
lington & Missouri River R. Co.*, 70 N. Y. 223; *Nelson, Mor-
ris & Co. v. Rehkopf & Sons*, 25 Ky. Law 352, 75 S. W. 203;
*Simon v. Southern R. Co.*, 236 U. S. 115.

Some contention is made in appellant's behalf that, be-
cause the mining company had some property in Seattle, con-
sisting principally of office furniture of the value of approx-
imately $500, that fact should be considered in aid of the
jurisdiction of the superior court for King county and its
power to subject the mining company to its process. The
answer to such contention is that this is not a proceeding
*in rem*, but an action to recover a personal judgment against
the mining company. We are not here concerned with the
question of jurisdiction to render a judgment *in rem*, but a
judgment *in personam*. Plainly, we think, the fact of the
mining company's having property in Seattle is of no con-
trolling force whatever in this case.

Some contention is made in appellant's behalf that the
mining company, in effect, entered a general appearance in
this case. This contention seems to be rested upon the fact
that, after the commencement of the action in the superior
court for King county, the mining company, being a foreign
corporation, petitioned for the removal of the case to the
Federal court, and before such removal was consummated,
amended its petition in that behalf showing somewhat more
certainly than in its original petition that it was a corpora-
tion organized under the laws of the state of New York.

Upon the approval of the bond for removal to the Federal court by the superior court, an order was entered containing recitals of some considerable length, among other things, reciting that, on motion of defendant mining company, it was allowed by the court to amend its petition by interlineation. Counsel's contention seems to be that this leave of the superior court to amend the petition constituted a general appearance upon the part of the mining company. We cannot assent to this view. The petition to remove being in effect a challenging of the court's jurisdiction, or rather a plea to oust it of jurisdiction, the remarks of the appellate court of Illinois in *Pooler v. Southwick*, 126 Ill. App. 264, seem to effectually answer this contention, as follows:

"Such a plea to the jurisdiction of the court is amendable and our liberal statute of amendments applies fully thereto. *Midland Pacific Ry. Co. v. McDermid*, 91 Ill. 170; *Drake v. Drake, supra*. Hence a motion for leave to amend such a plea cannot be said to be a general appearance giving the court full jurisdiction. Such a rule would defeat the right to amend, for leave to amend can only be obtained by a motion to the court. It would be a contradiction in principle to hold that one may amend a plea to the jurisdiction of the court, but that if he asks leave to do so he thereby defeats the plea and gives the court full jurisdiction."

In *Wabash Western Railway v. Brow*, 164 U. S. 271, it was held that a petition in general terms for removal of a cause to a Federal court, without specifying or restricting the purpose of the defendant's appearance in the state court, is not, like a general appearance, a waiver of any objection to the jurisdiction of the court over the person of the defendant, and that the filing of a petition for removal is not a general appearance, but a special appearance only. If the filing of a petition for removal is not a general appearance, then manifestly an amendment of such a petition would not be a general appearance. It seems plain to us that the superior court for King county did not acquire jurisdiction over the mining company by virtue of any general appear-

ance of that company. After the case was removed to the
Federal court, it was remanded to the superior court by the
Federal court, and thereafter the mining company specially
appeared and moved to quash the service of the summons,
when the motion was disposed of in the superior court.

Further contention is made in appellant's behalf that the
trial court erred in setting aside the default entered against
the mining company without formal motion in that behalf by
the mining company. Since we have arrived at the conclu-
sion that the service of the summons was wholly without ef-
fect as against the mining company, and because it was not
subject to being sued in this action in this state, it follows
that the default entered against it was void and that the trial
court did not err in setting it aside upon its own motion, as
it is insisted by counsel for appellant the court did. It would
seem that such order should follow the setting aside of the
service as a matter of course.

We are of the opinion that the order quashing the service
of summons upon Munro as agent for the mining company
must be affirmed. It is so ordered.

It is contended in appellant's behalf that the trial court
erred in dismissing the case for want of sufficient evidence to
support any award of damages as against the defendant
O'Neill. This disposition of the case upon the merits in
favor of O'Neill seems to us so plainly correct that it calls
for but little discussion. Respondent O'Neill was the salaried
superintendent for the mining company in the construction
of the tunnel in which appellant was injured by an explosion
of a dynamite charge. The foreman, Miller, working under
O'Neill, was in charge of the particular work in which ap-
pellant was one of the employees at work at the time he was
injured. The injury occurred by the explosion of a dyna-
mite charge during the work of a night shift. O'Neill was,
at that time, in bed asleep, and evidently had been for sev-
eral hours. He was not present, and knew nothing of what

was being done there for some time preceding the occurring of the accident. We are unable to find, in the record before us, anything that points to any act of O'Neill as the proximate cause of the injury to appellant. It is true O'Neill was the superintendent and had given certain general directions concerning the performance of the work; but the evidence wholly fails to show that the accident was the result of following O'Neill's directions. Indeed, it is conclusively proven that the accident would not have happened had his directions been followed. We think this branch of the case needs no further discussion. The judgment of dismissal in favor of O'Neill is affirmed.

ELLIS, C. J., MOUNT, and FULLERTON, JJ., concur.

HOLCOMB, J. (dissenting)—I am unable to concur with the majority in the affirmance of the quashing of service of process upon the respondent mining company. It seems clear to me that the facts show that the agent, Munro, performed much of the corporation's necessary general business in this state. As to that part of the decision, I dissent.