## KLABZUBA v. SOUTHERN PAC. CO.

District Court, W. D. Washington, N. D. June 13, 1929.

No. 20088.

Vanderveer & Levinson, of Seattle, Wash., for plaintiff.

Bogle, Bogle & Gates, of Seattle, Wash., for defendant.

NETERER, District Judge. The plaintiff, by her complaint, as administratrix of the estate of Klabzuba, seeks compensation in the state court of Washington, for the death of Klabzuba, occasioned at Klamath Falls, Or., by the negligence of the defendant, a Kentucky corporation, operating a line of railway at the place of injury.

The defendant, under a special appearance, removed the cause to this court, and, specially appearing in this court, moves to quash the attempted service made upon the defendant, for that the defendant is a foreign corporation and has not complied, nor made any attempt to comply, with the laws of the state of Washington with reference to foreign corporations doing business in this state; that defendant is an interstate carrier by railroad and neither owns, leases, operates, nor maintains by itself, or in connection with any other person, company, or corporation, any railway in the state of Washington, nor receives, carries, or delivers passengers or freight within the state; that the person upon whom the attempted service for the defendant was made, is an em-

360

ployee of the defendant company whose duties are to solicit for the defendant passengers and freight traffic and persons who intend to travel or ship freight from the state to places in the United States which may be reached over the defendant company's road, to take that route for service; that no person has been designated in the state by the defendant upon whom service of process can be made; that the defendant maintains an office in the city of Seattle in charge of representatives of the defendant, who solicit passenger and freight traffic; that when application is made, through tickets are issued from Seattle to outside points on the defendant's line by the Union Pacific, Northern Pacific, or Great Northern Railway Company; that to expedite such service blocks of tickets are carried in stock by the representatives of the defendant and bear the name of one of the initial carriers, and do not bear the name of the defendant company as initial carrier; that the tickets constitute a contract between the initial carrier and the passenger, the price for which is collected by the Southern Pacific Company's employee and delivered to the initial carrier; that thereafter an adjustment is made between the Southern Pacific and such initial carrier, the defendant company ultimately receiving from the initial carrier its share of the total purchase price proportionate to its participation in the carriage; that the same formula applies to freight traffic; that the representative of the defendant also has in stock sleeper tickets of the Pullman Car Company, which cars are carried over the initial carrier to Portland, thence over the defendant railway; that persons buying a ticket from Seattle must change trains at Portland, unless they have Pullman car tickets, in which event no change will be necessary; that a time table is issued by the defendant company, "a table of condensed schedules of through service," but this, of itself, does not show operation of trains within the state of Washington by the defendant company and is in harmony with the operation of the defendant outside of the state with the initial carrier in the state, by the agency of the Pullman Car Company sleeper, carried by the initial carrier to Portland, thence by the defendant company to San Francisco.

The issue here (somewhat related) was discussed by this court in Johanson v. Alaska Treadwell Gold Mining Co., 225 F. 270, in which it was held that, under the facts in that case not distinguishable in principle from the facts here, did not constitute the defendant as doing business within the state within the purview of the law giving the court jurisdiction; and the Supreme Court of the United States in Davis v. Farmers' Co-operative Equity Co., 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996, and in Michigan Cent. Ry. Co. v. Mix et al., 278 U. S. 492, 49 S. Ct. 207, 73 L. Ed. ——, so held. Compare, also, Green v. Chicago, B. & Q. R. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916; Arrow Lumber & Shingle Co. v. Union Pac. R. Co., 53 Wash. 629, 102 P. 650; Rich v. Chicago, B. & Q. R. Co., 34 Wash. 14, 74 P. 1008; Macario v. Alaska Gastineau Min. Co., 96 Wash. 458, 165 P. 73, L. R. A. 1917E, 1152; Royce v. Chicago & N. W. Ry. Co., 90 Wash. 378, 156 P. 16.

The demand in suit did not arise out of any carriage or transportation contract, or any act or thing originating in this state.

Sleicher v. Pullman Co. (C. C.) 170 F. 365, is distinguished from this case by the fact that the railroad maintained offices in New York, employed passenger and freight agents to solicit business, held directors' meetings, disbursed dividends, and kept an office for transfer of its stock, with an assistant secretary in charge. In Chesapeake & O. Ry. Co. v. Stojanowski (C. C. A.) 191 F. 720, the court merely concluded the corporation was "doing business," without stating any facts upon which to predicate the conclusion.

The motion to quash must be granted.