**Anthony OREFICE**

v.

**LAURELVIEW CONVALESCENT CENTER, INC.**

Civ. A. No. 74–1318.

United States District Court, E. D. Pennsylvania.

Jan. 29, 1975.

* * * * *

Arthur Alan Wolk, Philadelphia, Pa., for plaintiff.

Victor Wright, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Before this Court is a motion by Defendant Laurelview Convalescent Center, Inc., to quash service of the complaint upon it in the instant action. After due consideration of the arguments of both parties, this Court has concluded that Defendant's motion must be denied.

Plaintiff, an architect, instituted this action to recover compensation for services he performed pursuant to an oral contract allegedly entered into between himself and defendant, a New Jersey corporation which operates a convalescent home in Mount Laurel, New Jersey.

In filing his complaint, Plaintiff directed service to be made upon Geriatric and Medical Center, Inc., ("Geriatric"), at 6212–50 Walnut Street in Philadelphia. Geriatric is the parent corporation of defendant. Pursuant to such instructions, the Marshal delivered the summons and complaint at Geriatric's offices to one Fred Applebaum, Geriatric's controller and vice-president. Defendant subsequently filed the present motion to quash service, on grounds that Applebaum was not an officer of defendant, and that defendant existed distinctly from its parent, Geriatric.

Plaintiff opposed this motion, and after considering the arguments and memoranda submitted by the parties, this Court requested additional information from the parties as to the respective relationships between Geriatric and defendant, and Applebaum and defendant. The information subsequently furnished by the parties indicated among other things that defendant existed separately from Geriatric prior to its acquisition by Geriatric in 1970, that Geriatric neither solicits nor feeds clients to defendant, and that at least as to the handling of clients and operations of its convalescent center in New Jersey, defendant functions as a separate entity from Geriatric.

Defendant's bookkeeping, however, is done at Geriatric's Philadelphia office by another subsidiary of Geriatric, and defendant's ledgers are accordingly kept at the Philadelphia office.

In addition, Defendant also maintains its corporate minute books, corporate seal, and corporate checkbook at the Philadelphia office, from which payments are made for all defendant's transactions, including routine purchases and bills. Moreover, while defendant's payroll print-out and checks are prepared by an outside computer company, the checks are signed at the Philadelphia office by the president of Geriatric and then picked up every two weeks by an individual from defendant who takes them back to New Jersey for distribution to defendant's employees. Defendant in addition maintains a bank account in Philadelphia with the First Pennsylvania Bank and Trust Company, and a Pennsylvania telephone number.

As to Mr. Applebaum, while he is officially the vice-president and controller only of Geriatric, with no formal position with defendant, he testified at deposition that because his position as controller with Geriatric involves overseeing the preparation and maintenance of the accounts and books of all Geriatric's subsidiaries, he is thus in effect the controller of defendant. He testified also that he is in effect custodian of defendant's records, and has authority to and does sign checks for defendant.

Defendant's motion to quash service involves two primary issues. First, we must decide if defendant is "amenable" to service by this Court; that is, we must decide whether defendant has suf-

ficient contacts with this jurisdiction to enable this Court to obtain in personam jurisdiction over defendant consistent with state and federal Constitutional requirements. Second, even if such sufficient basis for in personam jurisdiction over defendant exists, we must decide whether plaintiff has served defendant in the method or manner required by F.R.Civ.P. 4.

■ As to the first issue, we conclude that defendant is amenable to the in personam jurisdiction of this Court, both under federal due process and the requirements of Pennsylvania law. In International Shoe v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the leading case on federal Constitutional requirements for in personam jurisdiction, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment permits in personam jurisdiction in a particular forum if the defendant has certain "minimum contacts within the territory of the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 154.

According to the Court, due process requires only that these minimum contacts of the corporation with the forum state be such as to ". . . make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." 326 U.S. at 317, 66 S.Ct. at 158.

The "reasonableness" of requiring a corporation to defend in a particular forum, the Court said, would depend on, among other things, an "estimate of the inconveniences" to the corporation from a trial in the particular forum in question, as well as the extent to which the corporation's activities within the forum were "continuous and systematic." 326 U.S. at 317, 66 S.Ct. 154. Of particular relevance to the instant case, *International Shoe* also suggested that more "substantial" activities or contacts with the forum state may be required to render jurisdiction reasonable where the cause of action is unrelated to the corporation's activities in the forum state than where such activities give rise to the suit in question. See 326 U.S. at 317–318, 66 S.Ct. 154. The Court noted, however, that the criteria by which to determine whether grounds for in personam jurisdiction existed in a given case could not be reduced to mechanical or quantitative form, but would instead have to be made in each case against a consideration of

". . . the quality and nature of the [corporation's activities] in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." 326 U.S. at 319, 66 S.Ct. at 160.

Due process would be satisfied, said the Court, if a state extended its jurisdiction to those corporations who exercised the privilege of conducting activities within that state, but not those corporations with whom the state had "no contacts, ties, or relations." 326 U.S. at 319, 66 S.Ct. at 160.

On these principles, the Court then held that the Due Process Clause permitted the State of Washington, in a suit for contributions allegedly due under that state's unemployment compensation act, to obtain in personam jurisdiction over a Delaware shoe manufacturing corporation which maintained neither an office nor merchandise in Washington, and made no contracts in Washington for the sale or purchase of its merchandise, but merely maintained thirteen salesmen in that state who solicited and transmitted orders but had no authority to contract on the manufacturer's behalf.

■ Under the principles of *International Shoe* and its progeny, we conclude that federal due process permits in personam jurisdiction over defendant in the instant case. While the cause of action here did not arise out of the ac-

tivities of defendant within this state, due process does not necessarily require the cause of action to arise from a corporate defendant's activities within the forum state for in personam jurisdiction to exist. *International Shoe*, 326 U.S. at 318, 66 S.Ct. 154; and Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), in which the Court expressly held that

> ". . . the Fourteenth Amendment leaves Ohio free to take or decline jurisdiction over the corporation . . . [even though] . . . (t)he cause of action sued upon did not arise in Ohio and does not relate to the corporation's activities there." 342 U.S. at 438, 72 S.Ct. at 415.

*Perkins* involved a stockholder's suit brought in Ohio for dividends claimed due from a Philippine mining company whose president, general manager and chief stockholder had conducted many of the company's non-mining activities from Ohio during the Japanese occupation of the Philippines in World War II. In determining whether Ohio could have in personam jurisdiction over the mining company on the basis of the company president's activities while in Ohio, *Perkins* reasoned that under *International Shoe*, cited at length, in personam jurisdiction not related to a corporation's activities within the state of the forum could nonetheless exist if the activities within the forum were sufficiently "substantial" to render it fair to subject the corporation to the forum's jurisdiction. 342 U.S. at 447, 72 S.Ct. 413. The *Perkins* Court then found the requisite "substantiality" in that case from the fact that the defendant's president had from Ohio carried on company correspondence, drawn and distributed company salary checks, maintained substantial company accounts in Ohio banks, made payments to cover routine purchases for the company, and held several directors' meetings at his Ohio home or office. 342 U.S. at 448, 72 S.Ct. 413.

Whether or not *International Shoe* and *Perkins* require a higher threshold of corporate activity within the forum when the suit does not arise from such activity, we conclude that defendant's activity in Pennsylvania meets whatever threshold is required for in personam jurisdiction in Pennsylvania. While defendant apparently conducts none of its nursing and treatment activities within Pennsylvania, it nonetheless does conduct within Pennsylvania other continuous and systematic activities vitally related to its corporate existence. As noted above, all the bookkeeping, maintenance of corporate minutes, payment of bills, as well as the preparation, signing, and delivery-for-distribution of its payroll checks are done in Pennsylvania.

Each of these factors has been considered relevant by courts in other cases. See *Perkins, supra,* [bank accounts; payroll preparation and delivery; payments for routine company purchases and transactions]; Glick v. Empire Box Corp., 119 F.Supp. 224 (S.D.N.Y.1954), (telephone listing; local bank accounts); Allegue v. Gulf and South American S. S. Co., 103 F.Supp. 34 (S.D.N.Y.1952) (telephone listing). Whether any of these activities individually would constitute grounds for in personam jurisdiction is a question we need not decide, for it suffices for us to conclude that such grounds exist on the basis of these activities considered cumulatively, along with defendant's maintenance of a Pennsylvania bank account and telephone listing. These activities, especially the bookkeeping, the payment of all bills, and the maintenance of a bank account from which such payments are made, are vitally important to the operation of defendant's or any other business. By conducting such activities in Pennsylvania, defendant has availed itself of the privilege of operating in Pennsylvania beyond the point at which it is unfair or unreasonable to hold defendant responsible to the jurisdiction of Pennsylvania's courts.

We would note that our conclusion is not changed by the argument of defendant that the activities conducted in its behalf in Pennsylvania are conducted by corporations separate from defendant and personnel not on defendant's payroll and having no formal connection with defendant. For one thing, it is not immediately clear that the law would require us to hold that Applebaum and the other employees of Geriatric and its bookkeeping subsidiary were at the time of service of process independent and unconnected with defendant. Geriatric and defendant are, after all, parent and subsidiary, with what would appear to be significant, continuous and systematic interaction, and an overlapping of responsibilities of employees to the parent and subsidiaries respectively.

Applebaum himself testified that he is in effect the controller of defendant, and his actions, especially his signing of checks for Defendant, readily support such testimony.

 More important, however, even if Geriatric, its bookkeeping subsidiary, and Applebaum were regarded as independent and distinct from defendant, our conclusion as to the existence of grounds for in personam jurisdiction over defendant would not change. If the requisite level of activities are conducted in a jurisdiction on a corporation's behalf, in personam jurisdiction will exist even if those activities are conducted by an agent employed solely by another corporation entirely distinct and independent of the defendant. In Nugey v. Paul-Lewis Laboratories, Inc., 132 F.Supp. 448 (S.D.N.Y.1955), for example, the court held that where an individual solicited orders for and otherwise represented within the state of New York a corporation whose location and only place of business was Wisconsin, the individual representative's activities on behalf of the corporation established the basis for in personam jurisdiction over the corporation even though the individual was not employed by the corporation

and represented other manufacturers as well.

Reason clearly warrants such a conclusion. To recognize the argument which defendant makes in this case that the activities of Geriatric and Applebaum on defendant's behalf are nonetheless not activities attributable to Defendant would allow a corporation to escape a state's jurisdiction merely by delegating its activities within a state, however substantial and important to the corporation's functioning those activities might be, to an agent not formally within the corporation's structure. Fairness to corporations requires no such principle, and fairness to the states dictates strongly against it.

Having concluded that federal due process permits in personam jurisdiction over Defendant in this case, we conclude also that Pennsylvania's requirements for in personam jurisdiction dictate the same result. At present, there exists some dispute as to whether, at least where service under F.R.C.P. 4(d)(3) is challenged, a federal district court must consider not only federal due process requirements for in personam jurisdiction, but also possibly more restrictive state constitutional or statutory requirements. Compare, e. g., the majority and dissenting opinions in Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963); see also 2 Moore's Fed. Practice § 4.25(7) (2d ed. 1974).

 In Pennsylvania, however, this issue is now moot by virtue of the recently enacted Pa.Stat.Ann. tit. 42, § 8309 (b) (Supp.1974), which provides:

". . . (T)he jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and powers exercised by them to the fullest extent allowed under the Constitution of the United States."

Under this statute, if as we have concluded in this case, in personam jurisdiction exists under federal due process, it exists as well under the law of Pennsylvania.

Having concluded that the basis for in personam jurisdiction exists in this case over defendant, and that defendant is thus amenable to service in Pennsylvania, we conclude as well that the service made in this case upon Applebaum was a valid method or manner of service of defendant under F.R.C.P. 4 (d)(3), which provides that service upon a foreign corporation may be made

" . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. . . ."

In the instant case, Applebaum as de facto controller of defendant qualifies in our judgment under the "managing or general agent" category of 4(d)(3). It is generally held that if a nonresident corporation conducts activity within a state sufficient to permit in personam jurisdiction, a person in charge of those activities qualifies as a managing or general agent for purposes of 4(d)(3). 2 Moore's Fed. Practice § 4.22(2), p. 1124 (2d ed. 1974). As noted above, in our opinion defendant conducts sufficient activity in Pennsylvania to permit in personam jurisdiction here, and Applebaum by his own admission stands in charge of these activities.

More important than Applebaum's designation as managing or general agent, however, is simply his position of authority and responsibility vis-a-vis defendant. The courts in applying 4(d) (3) to any given case have concerned themselves not with the formal designation of the recipient of service, but rather with whether such recipient occupies a position of sufficient responsibility and authority that it is reasonable to assume he will transmit the summons and complaint to those persons responsible for directing the corporation's response to the action. See e. g., Nugey v. Paul-Lewis Laboratories, Inc., 132 F.Supp. 448 (S.D.N.Y.1955), where the Court held service valid upon an out-of-state corporation by virtue of service upon an individual who merely solicited orders for and otherwise represented the corporation within the state, even though not an employee of the corporation. Indeed, in Den Heijher v. Erie Railroad Co., 171 F.Supp. 174 (S.D.N.Y.1959), the Court held service valid upon a foreign defendant railroad company where the plaintiff had served the station agent of another railroad company which by agreement handled the defendant's passenger and freight traffic in the forum state. See also 2 Moore's Fed. Practice § 4.22(2) (2d ed. 1974).

In the instant case, Applebaum occupies a position of responsibility with respect to defendant sufficient to justify a reasonable belief that he would transmit notice of the action to the proper individuals in defendant's corporate structure. It is quite reasonable to believe that an individual who may sign checks for a corporation, and supervises its ledgers, accounts, minute books, and the payment of its bills, will inform the corporation that it has been sued.

That plaintiff originally directed service to be made upon Geriatric, rather than upon Applebaum specifically, does not render the service ultimately made upon Applebaum invalid. In certain cases service on a subsidiary may be made by serving the parent, see 2 Moore's Fed. Practice § 4.25(6), p. 1175, n. 2 (2d ed. 1974). Alternatively, in certain cases one organization or corporation may qualify as the agent for another corporation, and service upon the second corporation may be accomplished by delivery of the summons and complaint to an appropriate person in the first corporation. See 2 Moore's Fed. Practice § 4.22(2), p. 1126 (2d ed. 1974). We need not, however, decide whether these principles govern the instant case. It suffices in the instant case that whatever the designation plaintiff directed for service, service was in fact made upon an individual whose own activities on behalf of defendant qualified him to re-

ceive service on defendant's behalf. The service on defendant was therefore valid.

Accordingly, for the above reasons defendant's motion to quash service must be denied.