**Mary Lou TILLAY, Individually and as Personal Representative of the Estate of Dale Tillay, Deceased, and for Tamara Sue Tillay, a minor child, et al., Plaintiffs,**

v.

**IDAHO POWER COMPANY, a corporation, Defendant.**

No. C–76–82.

United States District Court, E. D. Washington.

Sept. 9, 1976.

Byrd, Davis, Eisenberg & Clark, Austin, Tex., Baker, Tessendorf, Milbourn & Fehringer, Columbus, Neb., Minnick & Hayner, Walla Walla, Wash., for plaintiffs.

Fred W. Gilbert, of Hamblen, Gilbert & Brooke, Spokane, Wash., for defendant.

## MEMORANDUM AND ORDER TRANSFERRING CASE

NEILL, Chief Judge.

In this diversity case defendant has moved to dismiss on the basis of alleged lack of jurisdiction or, in the alternative, for change of venue to the district of Oregon. For reasons hereinafter stated the case will be transferred to the District of Oregon.

On April 11, 1974, Vernon Dale Tilley was a passenger in a small aircraft flying near La Grande, Oregon, when it struck defendant's power lines, crashed and burned, killing all occupants. Alleging that defendant's power lines were unmarked and negligently placed, plaintiffs brought this action basing jurisdiction on diversity of citizenship under 28 U.S.C. § 1332(a)(1).

Defendant's motion to dismiss is based on the grounds that defendant, a Maine corporation with its principal place of business in Idaho, is not licensed to do business in the State of Washington, does not maintain a place of business in Washington and, therefore, this Court lacks jurisdiction over it. Defendant further asserts plaintiffs have brought this action in the wrong judicial district because their claim for relief arose in Oregon and is prosecuted under Oregon

law. Further, defendant argues plaintiffs' service of process on defendant in Boise, Idaho was ineffective because extraterritorial service is only permissible under Washington's long arm statute, RCW 4.28.185, which is inapplicable to the case at bench. The alternative motion for change of venue is based on the ground that the District of Oregon is a more convenient forum and a related action from the same aircraft crash is currently pending there and could be consolidated with the instant action if the venue change were ordered.

Plaintiffs resist the motion to dismiss, contending defendant is doing business in Washington, makes regular purchases of equipment here and because of its membership in an "Intercompany Pool" with offices in Spokane, Washington. Plaintiffs resist defendant's motion for change of venue on the grounds plaintiffs' choice of forum is presumptively preferable, a change of venue would be inconvenient to plaintiffs, most of whom are Washington residents, and plaintiffs would be prejudiced by consolidation of this action with the pending Oregon case.

■ As a general rule, "[i]n the absence of jurisdiction over the person of a defendant in an action in personam, the orders and judgments of the court are void. *Robertson v. Railway Labor Board*, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119 . . ." *Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962). *See also, Arrowsmith v. United Press International*, 320 F.2d 219, 234, 6 A.L.R.3d 1072 (2d Cir. 1963). However, as will be noted infra there is an exception to this general principle, which this Court believes is determinative of the pending motions. In a diversity case the determination as to jurisdiction is to be made by applying state law to the extent that the state's exercise of jurisdiction would be consistent with due process:

the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with "federal law" entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.

*Arrowsmith v. United Press International, supra,* 320 F.2d at 223. Accord: *Southern Machine Company v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir. 1968); *Mechanical Contractors Ass'n v. Mechanical Contractors Ass'n of Northern California,* 342 F.2d 393, 398–399 (9th Cir. 1965). Accordingly, the Court must begin its inquiry with an examination of Washington's jurisdictional law.

■■ Washington's legislature has empowered the courts of Washington to exercise their jurisdiction under the state's long arm statute, RCW 4.28.185, to the fullest extent possible under the Due Process Clause. *Tyee Construction Company v. Dulien steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245 (1963); *Peter Pan Seafoods v. Mogelberg Foods,* 14 Wash.App. 527, 544 P.2d 30 (1975), and jurisdiction under such a statute can constitutionally be based on the barest of contacts with the forum state. *See, e. g., Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Company,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, jurisdiction can be founded on Washington's long arm statute only if plaintiffs' claims for relief arose from defendant's contacts with the state. RCW 4.28.185. *Cf. Thompson v. Ecological Science Corporation,* 421 F.2d 467, 470 (8th Cir. 1970). In apparent recognition of the fact that plaintiffs' cause of action is unrelated to any of defendant's contacts with Washington, plaintiffs do not assert the long arm statute as the basis of the Court's jurisdiction, but rather allege that defendant is "doing business" in Washington and is therefore sufficiently "present" to be sued here on any claim, irrespective of where it arose. *Perkins v. Benguet Consolidated Mining Company,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *International Shoe Company v. Washington, supra,* 326 U.S. at 317–318, 66 S.Ct. 154; *Macario v. Alaska Gastineau Mining Company,* 96 Wash. 458, 165 P. 73 (1917).

Where, as in the case at bench, the alleged basis of jurisdiction is that defendant is doing business in the forum state, defendant's contacts with the state must be considerably more substantial than in cases where defendant's contacts with the forum give rise to plaintiffs' claim, *Hanson v. Denckla, supra,* 357 U.S. at 251–253, 78 S.Ct. 1228; *Arrowsmith v. United Press International, supra,* 320 F.2d at 233–234, and the determination of whether such contacts amount to doing business must be made on a case-by-case basis by examining all the facts and circumstances of the foreign corporation's contacts with Washington. *Tyee Construction Company v. Dulien Steel, supra,* 62 Wash.2d at 115, 381 P.2d 245, citing *Perkins v. Benguet Consolidated Mining Company, supra,* 342 U.S. at 445, 72 S.Ct. 413. Accordingly, the Court must attempt to distill guidelines from the long line of Washington cases dealing with the question of "doing business" for jurisdictional purposes, and apply these to the facts of the case at bench against the backdrop of limitations imposed by the Due Process Clause.

The Intercompany Pool, of which defendant is a member, has its offices in Spokane, Washington. The pool Agreement provides, inter alia, for the creation of a committee composed of one representative from each of the seven signatory power companies. This committee is empowered to "direct all operations" under the agreement by the unanimous vote of all members (except for budgetary matters, which can be approved by a two-thirds vote of committee members). The activities of the committee consist of drafting annual reports concerning usage of electricity and generating capacity, research and development, and coordination of requests between the parties for additional electricity or to dispose of excess generating capacity. The operating expenses of the pool are administered by Washington Water Power Company, one of the signatories to the agreement, and are shared by the parties in proportion to the quantity of electricity each party sells. The agreement also provides that each party shall determine for itself whether or not to purchase power or to make it available to other parties, and that power sales and payment therefor shall be made directly between the parties rather than through the pool. In defendant's words, the Intercompany Pool

> is primarily a clearinghouse for information as to the power supply and demand in the five-state area. It does not have the authority to buy or sell any power, but only transmits information to its members, who are then free to act on that as they see fit.

The power defendant sells to Washington utilities is delivered outside the state of Washington and defendant has no transmission lines or other facilities within the state. Further, it is uncontroverted that, except for the Intercompany Pool, defendant solicits no business in Washington, maintains no office or employees here, pays no Washington taxes, conducts no advertising in Washington and its purchases in Washington are strictly interstate transactions for which defendant pays no Washington sales tax.

In nearly every Washington appellate decision holding a foreign corporation was doing business in Washington for jurisdictional purposes, the foreign corporation employed an agent, directly answerable to it, who actively and regularly conducted business on behalf of the corporation within the state. *Nakanishi v. Foster,* 64 Wash.2d 647, 393 P.2d 635 (1964); *International Shoe Company v. State,* 22 Wash.2d 146, 154 P.2d 801, *affirmed, International Shoe Company v. Washington, supra; State ex rel. Columbia Broadcasting Company v. Superior Court,* 1 Wash.2d 379, 96 P.2d 248 (1939); *State ex rel. Kerr Glass Manufacturing Corp. v. Superior Court,* 166 Wash. 41, 6 P.2d 368 (1931); *Johnson v. Atlantic & Pacific Fisheries Company,* 128 Wash. 578, 224 P. 13 (1924); *Strandall v. Alaska Lumber Company,* 73 Wash. 67, 131 P. 211 (1913); *Lively v. Husebye,* 60 Wash. 47, 110 P. 673 (1910); *Lee v. Fidelity Storage & Transfer Company,* 51 Wash. 208, 98 P. 658 (1908). Conversely, in the few cases where Washington courts have found jurisdiction over a

foreign corporation to be lacking, the defendant either had no in-state agent, *Oliver v. American Motors Corporation*, 70 Wash.2d 875, 425 P.2d 647 (1967), or the agent's activities within Washington were too incidental to the corporation's primary business activity to support Washington's assertion of jurisdiction, *State ex rel. Western, etc. v. Superior Court*, 26 Wash.2d 740, 175 P.2d 640 (1946); *Macario v. Alaska Gastineau Mining Company, supra,* or a domestic subsidiary corporation, wholly owned by the foreign corporation, was sufficiently independent of it to insulate the foreign corporation from the forum state's jurisdiction. *State v. Northwest Magnesite Company*, 28 Wash.2d 1, 182 P.2d 643 (1947), *Williams v. Canadian Fishing Company*, 8 Wash.App. 765, 509 P.2d 64 (1973). In all the above-cited decisions the Washington courts held that the exercise vel non of jurisdiction was consistent with the due process requirement of *Hanson v. Denckla, supra,* that

> there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *International Shoe Company v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95.

357 U.S. at ,253, 78 S.Ct. at 1240.

The cases from other jurisdictions upon which plaintiffs rely in urging the Court to assert jurisdiction over defendant similarly involved foreign corporations which conducted substantial business activity in the forum state through their agents, such as sending salesmen to the forum state for the purpose of regular selling and servicing of its product, *Lee v. Walworth Valve Company*, 482 F.2d 297 (4th Cir. 1973); maintaining a sales office in the forum state from which substantial sales activity was conducted and local purchases were made, *Manchester Modes, Inc. v. Lilli Ann Corporation*, 306 F.Supp. 622 (S.D.N.Y.1969); utilizing a domestic, wholly owned subsidiary corporation as its "branch" office for soliciting sales from the foreign parent corporation and sending a representative of the parent to the forum state to promote such sales, *Taisho Fire & Marine v. Vessel Montana*, 335 F.Supp. 1238 (N.D.Cal.1971); utilizing a parent corporation, which wholly owned the foreign subsidiary, to do its bookkeeping, keep its records, control its bank account within the forum state, and issue its payroll checks, *Orefice v. Laurelview Convalescent Center, Inc.*, 66 F.R.D. 136 (E.D.Pa.1975); or utilizing a franchisee as the foreign corporation's agent to control a local dealer's inventory, area of distribution, employees, business forms, and to inspect the local dealer's premises and records, *Volkswagen Interamericana, S. A. v. Rohlsen*, 360 F.2d 437 (1st Cir. 1966).

Defendant's only contacts with Washington consist of its annual purchase of approximately four percent of the equipment used on construction of new generation and transmission facilities, and its membership in the Intercompany Pool. These contacts lack the essential elements that the foreign corporation in some manner employ an agent actively engaged in a substantial amount of the foreign corporation's business in the forum state, as found in the cases discussed above holding that jurisdiction was properly asserted.

■ First, *Macario v. Alaska Gastineau Mining Company, supra,* indicates that defendant's purchases of equipment in Washington cannot be deemed "doing business" in the state. In *Macario* as in the case at bench the purchases in Washington were incidental to defendant's primary business operation in the sense that the Washington purchases were made merely to supply defendant with materials necessary to carry on its business, which was conducted wholly outside the state. 96 Wash. at 466, 165 P. 73. While *Macario* is a "dated" case, due to the vast expansion of state in personam jurisdiction that has subsequently occurred, it is also distinguishable from the case at bench in that defendant in *Macario* maintained a permanent office in Seattle, Washington, where its full-time "supply and forwarding agent" and two additional employees purchased and forwarded large quantities of supplies to defendant in Alaska. Here, however, defendant's contacts are far

less significant: it is undisputed that defendant's Washington purchases are made interstate, that defendant employs no agents within Washington to make its purchases and pays no Washington sales tax. Therefore, *Macario* would apply a fortiori to the case at bench, and defendant's purchases in Washington must be deemed "incidental" to its primary business activity of generating and selling electricity.

■ Second, the Court's jurisdiction cannot be sustained on the basis of defendant's involvement in the Intercompany Pool. It is apparent from the record that the pool is little more than a conduit for information and has no power to conduct sales or transact other business for its members. Defendant alleges without contradiction that all its power sales are transacted outside Washington independently of the pool and that it has no transmission lines or other facilities within the state. In light of these facts the Intercompany Pool cannot be characterized as defendant's agent, as plaintiffs urge, for an agent is not authorized to receive service of process unless he is

> an agent in fact, not merely by construction of law, and must be one having in fact *representative capacity and derivative authority*.

*State ex rel. Western, etc. v. Superior Court, supra,* 26 Wash.2d at 757, 175 P.2d at 649 (emphasis in original). It is revealing in this regard that plaintiffs did not attempt to effect service upon the Intercompany Pool employee they now allege to be defendant's Washington agent. *See also, Barrett Manufacturing Company v. Kennedy,* 73 Wash. 503, 131 P. 1161 (1913), quoted with approval in *International Shoe Company v. State, supra,* 22 Wash.2d at 171, 154 P.2d 801. In summary, these tenuous contacts with the state of Washington contain none of the elements of agency or active involvement in business activity in Washington as found in the decisions holding that foreign corporations were sufficiently "present" in the state to support assertion of jurisdiction. Nor are these minimal contacts of the type that become "constitutionally significant" by virtue of having a caus-

al connection to plaintiff's cause of action. *Thompson v. Ecological Science Corporation, supra,* 421 F.2d at 470. None of defendant's contacts with the state of Washington can be characterized as "act(s) by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws", *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240, for they are all collateral to defendant's primary business activity which is conducted wholly outside Washington.

■ There is no doubt that courts have effected a prodigious expansion of state in personam jurisdiction beyond that defined nearly a century ago in *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877), not only in those cases where a defendant's contacts with the forum are the source of injuries, *McGee v. International Life Insurance Company, supra,* but also where plaintiff's cause of action is unrelated to such contacts and defendant is present and doing business to some extent within the forum state. *Perkins v. Benguet Consolidated Mining Company, supra.* However, the Court must also be cognizant of the Supreme Court's admonition in *Hanson v. Denckla, supra,* 357 U.S. at 251, 78 S.Ct. at 1238:

> But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. (citation omitted) Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defendant in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. (citation omitted)

While defendant's involvement in the Intercompany Pool makes this case a close one, the Court cannot conclude that the mere use of information gathered within the state, even when coupled with defendant's Washington purchases, is a sufficient con-

nection with Washington to justify subjecting defendant to any and all claims that could be asserted against it, no matter what their nature or source. To do so would impinge upon those elusive notions "of fair play and substantial justice" that are the essence of due process. *International Shoe Company v. Washington, supra,* 326 U.S. at 320, 66 S.Ct. at 160; *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Therefore, the Court finds that defendant's contacts with Washington are not

> sufficiently substantial and of such nature as to permit [Washington] to entertain a cause of action against a foreign corporation, where the cause of action arose from activities entirely distinct from its activities in [Washington].

*Perkins v. Benguet Consolidated Mining Company, supra,* 342 U.S. at 447, 72 S.Ct. at 419, citing *International Shoe Company v. Washington, supra.*

■ However, the Court's lack of in personam jurisdiction over defendant does not necessitate dismissal of the action, for the Supreme Court has held that 28 U.S.C. § 1406(a) empowers federal courts to transfer cases to their proper judicial district even though the court lacks jurisdiction over the defendant. *Goldlawr v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). This result is proper where defendant has had actual notice of the pending litigation and where transfer of the case would avoid the "time-consuming and justice-defeating technicalities" that dismissal would entail. *Id.,* at 467, 82 S.Ct. at 916. Although jurisdiction in *Goldlawr* was founded on the Sherman Act, 15 U.S.C. § 4, and the Clayton Act, 15 U.S.C. § 15, subsequent decisions of the various Circuit Courts of Appeal have freely extended this principle to cases where jurisdiction is based on diversity of citizenship, as in the case at bench.[1] *Smith v. Peters,* 482 F.2d 799 (6th Cir. 1973); *Thompson v. Ecological Science Corporation, supra,* 421 F.2d at 470, n. 4 (dictum); *Taylor v. Love,* 415 F.2d 1118 (6th Cir. 1969); *Mayo Clinic v. Kaiser,* 383 F.2d 653 (8th Cir. 1967); *Koehring Company v. Hyde Construction Company,* 324 F.2d 295 (5th Cir. 1964); *Norair Engineering Associates, Inc. v. Noland Company,* 365 F.Supp. 740 (D.D.C.1973); *Ptaszynki v. Ferrell,* 277 F.Supp. 969 (E.D.Tenn.1967).

■ Accordingly, the Court finds that although jurisdiction over defendant is lacking, defendant nevertheless had adequate notice of this action and the interest of justice will be served by transfer rather than dismissal. 28 U.S.C. § 1406(a). Therefore,

IT IS ORDERED that defendant's motion to dismiss is DENIED and the case be and is hereby, transferred to the United States District Court for the District of Oregon. The Court's finding that there is no jurisdiction over defendant makes it unnecessary to consider defendant's alternative ground for dismissal that defendant was not properly served with process and the Court makes no finding with respect thereto.

---

1. The Court is aware of two diversity cases holding "that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss." *Read v. Ulmer, supra,* 308 F.2d at 917, quoted with approval and followed in *Rabiolo v. Weinstein,* 357 F.2d 167, 168 (7th Cir. 1966), *cert. denied,* 391 U.S. 923, 88 S.Ct. 1816, 20 L.Ed.2d 659 (1968). While neither case has been overruled, neither have they been applied in support of the proposition that defendant over whom jurisdiction is lacking has an unqualified right to an order of dismissal rather than transfer. Further, the fact that neither case adverts to *Goldlawr v. Heiman, supra,* undercuts any precedential value they may have in support of a result contrary to *Goldlawr* and its progeny.